Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4023 | **DATE** | 12/20/2001 |
| **CASE TITLE** | Roy L. White vs. Financial Credit Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Financial Credit Corp's Motion for Summary Judgment is granted, and White's Motion for Summary Judgment is denied. Financial Credit's Motion to Strike White's expert is granted. FCC's Motion to Strike evidence related to White's credit report is granted. FCC's Motion to Strike portions of White's Rule 56.1 submission is denied. FCC is granted leave to file its bill of costs.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | DEC 2 7 2001 | | |
| | Notified counsel by telephone. | | date docketed | | 87 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | | |
| ✓ | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| WAP | courtroom deputy's initials | FILED FOR DOCKETING 01 DEC 21 PM 2: 21 | mailing deputy initials | | |
| | | Date/time received in central Clerk's Office | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

**DEC 20 2001**

Judge Harry D. Leinenweber
U.S. District Court

ROY L. WHITE,

Plaintiff,

v.

FINANCIAL CREDIT CORP.,

Defendant.

Case No. 99 C 4023

Hon. Harry D. Leinenweber

**DOCKETED**

**DEC 2 7 2001**

### MEMORANDUM OPINION AND ORDER

Roy L. White didn't pay his membership dues to the health club he joined in 1996, and eventually Financial Credit Corporation ("FCC") attempted to collect the debt. As part of this effort, FCC sent White two letters. White believed that there was something wrong with the letters, and with the help of a law firm experienced in such matters, he filed this action claiming violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, and the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679b. Both sides now move for summary judgment.

### BACKGROUND

The two claims are founded on two letters FCC sent to White. The first letter, dated November 3, 1998, is one page long. The top third of the page is White's account statement, with FCC's and White's addresses, the account number, and the line "Balance Due: $725.85." The lower two thirds of the page is a letter to White.

The text reads:

RE:     BALLYS
CLIENT ACCT#:  32162214004
BALANCE DUE:  $725.85

Dear ROY L WHITE:

Let's make a deal!

In recent months, we have offered various discounts to you to help you settle your account.  For whatever reasons, you have not taken advantage of them.

Now we are giving you the opportunity to make us an offer.  Let's make a deal.

**This is your chance to make a deal with us and save money, amend your credit report, and avoid further collection steps.**

Our collection associates are ready to assist you with your particular needs.  Don't miss the opportunity – the savings can be staggering!

Call us the day you receive this offer because this opportunity expires 11/30/98.  This offer is void if settlement has already been arranged.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

Sincerely,
ROSEMARY BLACK–Phone: XXXXXXXXXX
Debt Collector
Financial Credit Corp.

The other letter is dated April 1, 1999, and consists of only one page.  It also includes an account statement and a letter to White.  The text reads:

## TIME'S STILL A WASTIN'!
### Income Tax Filing Deadline

Dear ROY L WHITE:

This is our last minute reminder to let you know the April 15th deadline is coming up fast!
Act now to settle your account by April 15th and receive the following benefits:

- **35% off your balance resulting in a $263.31 savings**
- **Improve your credit history**
- **Receive a paid in full letter**

If you don't have the money now, try a rapid refund, borrow the money, or call us to set up the payment plan so that you can beat the deadline.

Don't wait any longer, call us now!!

This is an attempt to collect a debt and any information obtained will be used for that  purpose.

- 2 -

This offer is void if previous settlement has already been arranged.

Sincerely,
Gene Witt–Phone: XXXXXXXXXXX
Debt Collector

## FCC'S MOTIONS TO STRIKE

FCC asks the court strike or bar the testimony of White's proffered expert, Edward Lawrence. Lawrence is a tenured professor of finance and Department Chair in the College of Business Administration at the University of Missouri campus in St. Louis. By affidavit, White offers Lawrence's opinion that both letters would be misleading to an unsophisticated debtor.

Lawrence is an expert in matters involving consumer credit. Lawrence's resume indicates that he authored a paper discussing the Credit Opportunity Act and discrimination in consumer credit, with the focus on the lending aspect of consumer rights. Dep. p. 15. He has served as an expert witness since 1984, working with issues involving consumer credit and consumer interaction with lenders of any type. Dep. p. 16-17. He has provided consulting services related to debt collection, building models to assess delinquency, default, and prepayment. Dep. p. 24. His research has given him a good working knowledge of the consumer credit industry. Dep. p. 25. He has also worked with the Credit Research Center at Georgetown University, although nothing from that work specifically relates to the opinions rendered in this case. Dep. p. 25-26.

He gained much of his experience from his work in the subprime lending industry, which involved reviewing files of

subprime mortgage applicants. Dep. p. 63. Relying on this experience, Lawrence believes that most people who default on one debt generally default on multiple debts. Dep. p. 62. Given this average number of bad debts, Lawrence believes that the payment of one debt "doesn't significantly improve one's credit rating." Dep. p. 62.

As part of his work on this case, Lawrence also conducted a survey of one of his undergraduate real estate classes made up of finance majors, students whom he viewed as "not really sophisticated consumers, but certainly [of] above average intelligence." Dep. p. 87. He surveyed the class for their reaction to the verbiage in the letters. *Id.* A majority found the letters to be misleading. He did nothing else to test whether unsophisticated consumers would be confused by the letter. Dep. p. 88. Based on this class survey and his belief that the average defaulter has several debts, Lawrence opines that the letters would lead unsophisticated consumers to believe that much of the negative information in their credit files could be removed by FCC if they paid the debt. Dep. p. 87.

When "specialized knowledge will assist the trier of fact to understand evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may" offer an opinion on the relevant issues. FED.R.EVID. 702. However, the testimony must be "based upon

- 4 -

sufficient facts or data," be "the product of reliable principles and methods," and the witness must have "applied the principles and methods reliably to the facts of the case." *Id.* When expert testimony is offered, the district court must exercise its gate keeping obligation to ensure that all such testimony is not only relevant, but reliable. *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)(*citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Certain guidelines aid the court in its gate keeping function, including whether the expert's "theory or technique . . . can be (and has been) tested," whether it "has been subjected to peer review and publication," whether there is a high "known or potential rate of error," whether there are "standards controlling the technique's operation," and whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Daubert*, 509 U.S. at 593-94.

Lawrence's credentials are impressive. However, the underpinnings of his opinion appear to be his experience in the subprime lending industry and his classroom survey. Neither his opinion regarding the number of an average debtor's defaults nor his casual survey has been subjected to peer review. Although he estimates that the average defaulter has defaulted on multiple debts, he offers no firm numbers in support of this opinion. He has not studied or reviewed any documents or treatises to support

- 5 -

his opinion. Although he recalls seeing numerous such cases in his experience, he did not survey any of these individuals to determine whether they would find the letters at issue to be misleading. He did survey some of his "not really sophisticated" students, but Lawrence's casual survey falls far short of reliable survey principles and methods. *See National Football League Properties, Inc. v. ProStyle, Inc.*, 57 F.Supp.2d 665, 668-69 (E.D. Wis. April 28, 1999).

Lacking solid data, Lawrence asks that we take too much on faith. His affidavit does too little to show that his opinion is the product of reliable principles and methods or that he has applied his principles reliably to the facts of this case. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997)(quotation omitted). Accordingly, FCC's motion to bar his testimony is granted.

FCC also objects to various paragraphs from White's Local Rule 56.1 Statement because they purportedly contain legal argument. Virtually all of these paragraphs merely attempt to set forth Lawrence's opinion, however, so the motion to strike these paragraphs is denied as moot.

Finally, FCC moves to strike White's affidavit and credit report because White disclosed the report after the end of discovery and because it contradicts White's deposition testimony

- 6 -

regarding his number of debts. In discovery, FCC sought all documents that White would rely upon to support his claim. White knew at least a month before submitting his motion for summary judgment that he wanted to use his credit report as evidence to support his motion. The court therefore finds that White's tardy disclosure of the report falls short of his FED.R.CIV.P. 26(e) duty.

Further, when asked, twice, at his deposition whether he had any debts other than the Bally's debt, White stated clearly that he had no other debts. White now submits an affidavit attaching the credit report indicating that White had defaulted on at least five debts. White's counsel asserts that this is not contradictory, explaining that White "did not consider himself to be indebted to any other entity other than Ballys. Plaintiff's credit reports indicate that certain creditors disagree with the plaintiff about the extent of his indebtedness. The fact that certain creditors believe the plaintiff owes them money does not contradict plaintiff's deposition testimony." Although White's attorneys may believe such paltering to be good lawyering, the court views it as akin to dissecting the meaning of the word "is." FCC's motion to strike the credit report is granted.

### DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). On cross-motions for summary judgment, this Court must look to the burden of proof that each party would bear at trial. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). Each party is then required to go beyond the pleadings and establish a genuine issue of material fact. *Id.* This is because a party's position as a cross-movant does not absolve it of its burden as a non-movant to set forth facts as to why summary judgment is not appropriate. *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 602 (7th Cir. 1989). The non-moving party must offer sufficient evidence to create a genuine issue of material fact for trial. *See Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1061-62 (7th Cir. 2000).

In his motion for summary judgment, White asks the court to rule that both letters violate the FDCPA. As FCC points out, however, White's FDCPA claim references only the November letter in his complaint. After reviewing the complaint and receiving no clarification from White, the court concludes that White's FDCPA claim encompasses only the November letter.

The FDCPA provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*         *         *

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10). White asserts that the sentence, "This is your chance to make a deal with us and save money, amend your credit report and avoid further collection steps," is misleading because the phrase "amend your credit report" suggests that White's credit report would be improved by paying off the debt, when in fact any effect on White's credit report would be marginal.

Practices that allegedly violate the FDCPA must be viewed from the objective standard of an unsophisticated debtor. *Pettit*, 211 F.3d at 1060 (*citing Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). The unsophisticated debtor is not as learned in commercial matters as federal judges, but he is not an utter imbecile. *Id.* (citation omitted). The unsophisticated debtor may be "uninformed, naive, or trusting," but he does not languish at the "the very last rung on the sophistication ladder." *Id.* (*quoting Gammon v. GC Servs., L.P.*, 27 F.3d 1254, 1257 (7th Cir. 1994)). Thus, this uneducated debtor possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses "reasonable intelligence," and is capable of making basic logical deductions and inferences. *Id.* Furthermore, while this unwary debtor may tend to read collection letters literally, he does not interpret them in a bizarre or idiosyncratic fashion. *White*, 200 F.3d at 1020. Under this standard, a

- 9 -

statement will not be confusing or misleading unless a significant fraction of the population would be similarly misled. *Pettit*, 211 F.3d at 1060.

Whether the notice is misleading is a question of fact, not a matter of law or logic. *See Walker v. National Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999). At the summary judgment stage, however, White must do more than merely speculate about how a naive debtor would interpret the letter. *Pettit*, 211 F.3d at 1061. White must offer sufficient evidence to create a genuine factual issue for trial, *see* FED.R.CIV.P. 56(e), but without Lawrence's testimony, there is little evidence of whether an unsophisticated debtor would be misled by the letter.

White's only remaining evidence is his obtuse deposition testimony in which he claims that the letter language misled him. This fails to create a genuine issue as to whether a significant fraction of the population would have believed the same thing after reading this letter. *Pettit*, 211 F.3d at 1062 (*citing Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). The Seventh Circuit has advised litigants on several occasions that this feat might be accomplished through the use of survey evidence. *See, e.g., Walker*, 200 F.3d at 501; *Pettit*, 211 F.3d at 1062; *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999). Aside from Lawrence's excluded testimony, White presents no such evidence. Standing alone, White's self-serving opinion falls far

- 10 -

short of creating a genuine fact issue for trial. *See Pettit*, 211 F.3d at 1062.

In pressing his CROA claim, White maintains – and FCC disputes – that FCC acts as a credit repair organization. The purposes behind the CROA are:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

> (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679. The CROA then defines a "Credit Repair Organization" as:

> (A) any person who uses . . . the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of –

> (i) improving any consumer's credit record, credit history, or credit rating; or

> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i); and

15 U.S.C. § 1679a(3). White argues that FCC held itself out as a credit repair organization by offering to amend White's credit report and improve his credit history.

The court disagrees with this interpretation of the statute. Statutes are not interpreted in a vacuum. *Smith v. Zachary*, 255

- 11 -

F.3d 446, 448 (7th Cir. 2001). The court ascribes to the statutory language its plain meaning, but "the meaning of statutory language, plain or not, depends on context." *Holloway v. United States*, 526 U.S. 1, 7 (1999)(quoting *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991)). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)(*quoting Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989)).

The plain statutory language, viewed in the context of its stated purpose, leaves no doubt that the CROA is aimed at companies that are in the business of performing "any service . . . in return for" money for the purpose of improving a party's credit history. FCC is not in that business; it is a debt collector providing a service for creditors and for its own account. It purchased White's debt from Ballys and now seeks to collect that pre-existing debt. In so doing, FCC is not offering to perform, nor is it implying that it can perform a service for the purpose of improving White's credit history. It is merely asking him, quite reasonably, to fulfill his obligation.

As part of its attempt to collect the debt, FCC has informed White that, if he pays up, it will report the debt as paid. Such reporting is merely a standard operating procedure for FCC, as it is for many businesses that hold accounts. Although credit

- 12 -

reporting is quite unremarkable in the business world, it does not render all businesses "credit repair organizations" if they tell delinquent accounts holders that such reports are made. White may think that FCC is offering to improve his credit history in return for money, but it is not. Because it is not performing (and is not offering to perform) a service for White with respect to his credit report, FCC is not a credit reporting organization as defined by the statute.

Even if the court ruled the CROA applicable to FCC, White could not withstand FCC's motion for summary judgment. The CROA provides that no person may:

> (3) make or use any untrue or misleading representation of the services of the credit repair organization; or
>
> (4) engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.

15 U.S.C. § 1679b(a)(3-4). His argument that the letters violate § 1679b(a)(3) mirrors his FDCPA claim: that the letters mislead recipients into believing that FCC will improve their credit history if they pay their debt to FCC. White also contends that FCC violated § 1679b(a)(4) when it mailed the letters.

Few reported cases interpret the CROA. Nevertheless, given the similarities of the statutes and their purposes, the court

- 13 -

concludes that the "unsophisticated debtor" standard applies when judging whether information is misleading under § 1679b(a)(3) or deceptive under § 1679b(a)(4). Although his CROA claim is based on both letters, it fails for the same reason as his FDCPA claim: a lack of evidence that an unsophisticated debtor would be misled by the letters. With no such evidence, as explained above, there are no issues to present to a jury.

### CONCLUSION

The December 20, 2001, oral ruling date is stricken. FCC's Motion for Summary Judgment is granted, and White's Motion for Summary Judgment is denied. FCC's Motion to Strike White's expert is granted. FCC's Motion to Strike evidence related to White's credit report is granted. FCC's Motion to Strike portions of White's Rule 56.1 submission is denied. FCC is granted leave to file its bill of costs.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: *December 20, 2001*

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Roy L. White

v.

Financial Credit Corp

**JUDGMENT IN A CIVIL CASE**

Case Number: 99 C 4023

☐   Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■   Decision by Court. This action came before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the motion for summary judgment by defendant Financial Credit Corp is granted.

Michael W. Dobbins, Clerk of Court

Date: 12/20/2001

Wanda Parker, Deputy Clerk